NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |  |
|---|---|---|
| SUNBEAM PRODUCTS, INC., | : | |
| Plaintiff, | : | **OPINION** |
| v. | : | Civ. No. 05-1135 (WHW) |
| DELONGHI AMERICA, INC. and CAPRESSO, INC., | : | |
| Defendants. | : | |

**Walls, Senior District Judge**

Before the Court is Defendant Capresso Inc.'s motion to strike the expert report of Dr. John Sovis and Plaintiff Sunbeam Products Inc.'s request for claim construction pursuant to Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996). These motions have been briefed and were argued before the Court on December 18, 2006. For the reasons expressed on the record, the motion to strike the expert report of Dr. Sovis is granted. This Opinion sets out the construction of the disputed claims, argued at the Markman hearing.

**FACTS & PROCEDURAL HISTORY**

Plaintiff Sunbeam Products, Inc. ("Sunbeam") filed suit against Defendants DeLonghi America, Inc. ("DeLonghi") and Capresso, Inc. ("Capresso") on June 3, 2004 alleging infringement, under the patent laws of the United States, 35 U.S.C. § 101, et seq., of U.S. Patent No. 5,699,719 ("the '719 patent"). The '719 patent generally covers a coffee maker with a brew-

**NOT FOR PUBLICATION**

through lid that utilizes a pressure controlled valve that allows liquid to flow directly from a brewing basket through the lid and into the carafe while simultaneously preventing liquid and heat from flowing in the opposite direction.

The application that led to the patent was filed with the U.S. Patent and Trademark Office on November 21, 1995. The '719 patent issued on December 23, 1997. Sunbeam alleges that the Capresso MT500 440 model and the Capresso CoffeeTec 471 model infringe claims 1, 7, 10, and 18 and that DeLonghi's models DC8OTC, DC55TC, DC85SC, and DC77TC infringe Claims 1, 6, 7, 10, 16, and 18. Sunbeam only alleges literal infringement and has not made any allegations of infringement under the Doctrine of Equivalents. Defendants have counterclaimed, alleging invalidity and non-infringement of the '719 patent.

The parties have engaged in and concluded discovery in accordance with a discovery schedule set by the magistrate judge. Fact discovery concluded on November 18, 2005. The parties exchanged initial expert reports on January 31, 2006 and Capresso and DeLonghi deposed Sunbean's expert witness on March 15 and 16. All discovery on infringement issues, fact and expert, closed on March 24, 2006.

On March 28, 2006, Capresso filed a motion for summary judgment and a motion to strike the expert report of Dr. John Sovis ("Sovis Report"). On the same date, DeLonghi made a motion for summary judgment of non-infringement and invalidity. Sunbeam requested a <u>Markman</u> hearing to construe the disputed claims.

The Court conducted a hearing and held oral argument on December 18, 2006 with regard to the motion to strike the Sovis Report and claim construction.

NOT FOR PUBLICATION

**STANDARD - CLAIM CONSTRUCTION**

Claim construction is a matter of law reserved exclusively for the Court. Markman v. Westview Instruments, Inc., 517 U.S. 370 (1996). The claims of the patent-in-suit must be construed before an infringement or invalidity analysis can be performed. Ethicon Endo-Surgery, Inc. v. United States Surgical Corp., 149 F.3d 1315 (Fed. Cir. 1998); Helfix, Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1346 (Fed. Cir. 2000). Only those claims at issue and in dispute need to be construed. See United States Surgical Corp. v. Ethicon, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

Claims are generally given their ordinary and accustomed technical meaning unless it appears from the patent specification or file history that the words were used differently by the inventor. See Phillips v. AWH Corp., 415 F.3d 1303, 1313, 1316-17 (Fed. Cir. 2005) (citations omitted). That ordinary meaning "is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." Id. at 1313.

When interpreting an asserted patent claim, the court should look first to the intrinsic evidence of record, which includes the patent's claims, the patent's specification, and the complete prosecution history. Markman, 52 F.3d at 979. Such intrinsic evidence is the most significant source of the legally operative meaning of disputed claim language. Vitronic Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1583 (Fed. Cir. 1996). As the Federal Circuit has noted, "the claims themselves provide substantial guidance as to the meaning of particular claim terms." Phillips, 415 F.3d at 1314. Both "the context in which a term is used in the asserted claim" and the "[o]ther claims of the patent in question" are useful for understanding the ordinary meaning. Id.

**NOT FOR PUBLICATION**

The specification is also highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.' " Id. at 1315 (quoting Vitronics, 90 F.3d at 1582). In short, the claims "must be read in view of the specification, of which they are a part." Markman, 52 F.3d at 979. Thus, "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction." Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1250 (Fed. Cir. 1998).

The court may also rely on extrinsic evidence, which is "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." Markman, 52 F.3d at 980. In particular, technical dictionaries have been recognized as a tool that can assist the court in determining the meaning of particular terminology." Phillips, 415 F.3d at 1318 (citing Teleflex, Inc. v. Ficosa N. Am. Corp., 299 F.3d 1313, 1325 (Fed. Cir. 2002)). However, extrinsic evidence is "less significant than the intrinsic record in determining the legally operative meaning of claim language." C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 862 (Fed. Cir.2004) (quotation omitted).

**DISCUSSION**

At issue in this case are disputed terms in claims 1, 7, 10, and 18. They are discussed in detail below.[1]

---

[1] At oral argument, counsel for DeLonghi indicated an interest in having the Court construe terms in claim 20. However, since claim construction for claim 20 was not directly raised nor briefed in the papers, the Court does not address claim 20 here.

**NOT FOR PUBLICATION**

A. **Claim 1 of the Patent**

> **A thermally insulated brewing device** comprising a thermal carafe adapted to receive and dispense brewed beverage and dimensioned to be arrangeable with an automatic drip brewing structure, the automatic drip brewing structure having a base for receiving the thermal carafe, a water reservoir for holding brewing water, a heated water distributor structure and brewing basket, a heating and pumping element for heating water from the water reservoir and pumping heated water to the heated water distributor structure, the thermal carafe having an internal cavity for receiving brewed beverage, insulated walls and an **insulated lid**; the **insulated lid** having a liquid passageway through which brewed beverage enters the carafe, the lid further comprising a **pressure controlled valve** in association with the liquid passageway operative to allow brewed beverage to flow into the carafe through the liquid passageway and **to prevent liquid from exiting the carafe through the liquid passageway**.

The parties dispute the construction of the terms "thermally insulated brewing device," "insulated lid," and "pressure controlled valve."

> **1. "thermally insulated brewing device"**
>
>> a. The Parties' Proposed Construction

The parties dispute whether the phrase "thermally insulated brewing device" limits the scope of the claim. Capresso argues that "brewing device" refers to the coffee maker and asserts that the <u>entire</u> coffee maker must be "thermally insulated" or have some sort of protection to protect heat loss. DeLonghi argues that the limitation lacks support in the specification and is indefinite under 35 U.S.C. § 112, ¶ 1. Sunbeam, in contrast, maintains that the phrase is part of the preamble and is not limiting.

According to Capresso, even if the term is part of the preamble, it is still a claim limitation which must be found within the accused device. See Seachange Int'l v. C-Cor, Inc.,

**NOT FOR PUBLICATION**

413 F.3d 1361, 175-76 (Fed. Cir. 2005) (preamble operates as a claim limitation of independent claim if it helps determine the scope of the claim and the claim that depends from it). Capresso notes that the limitations in the body of claims 1 and 7 both derive antecedent basis from the preamble. Claim 1 ("A thermally insulated brewing device comprising a thermal carafe. . .); Claim 7 ("[t]he brewing device of claim 1, further comprising. . ."). Therefore, Capresso maintains that the preamble is an essential structure of the claims. Further, Capresso argues that "brewing device" should not be construed as the carafe because a thermal carafe is described later in the claim. Whenever the patent specifications or claims refer to the carafe, they do so by using the word "carafe," not "brewing device." Accordingly, Capresso argues that "thermally insulated brewing device" should be construed as "thermally insulated coffee maker."

Sunbeam makes two main arguments in response to Defendants' construction: (1) the disputed phrase is part of the preamble and does not limit the scope of the claim and (2) assuming arguendo that the preamble does limit the claim, a proper interpretation requires only the carafe and lid to be insulated.

First, Sunbeam argues that "thermally insulated brewing device" is not part of the claimed invention. It asserts that the phrase is a "work piece" or a "reference point" for the claimed invention. A "work piece" is an element necessary to describe an invention, but not a necessary element. SDS USA, Inc. v. Ken Specialities, Inc., 107 F.Supp.2d 574, 593 (D.N.J. 2000) (holding that the term "ribbon stock" in the independent claims' preambles described the intended use of the apparatus but was not a claim limitation). Sunbeam advances two Federal Circuit cases for the proposition that a claim preamble has the import that the claim as a whole

**NOT FOR PUBLICATION**

suggests for it, and a work piece does not limit the scope of a claim. See Schumer v. Lab. Computer Sys., Inc., 308 F.3d 1304 (Fed. Cir. 2002) (holding that the preambles at issue – "point of origin," "angle of rotation," and "scale" – did not limit the scope of the digitizer invention but simply described features that necessarily exit in any coordinate system for a digitizer); Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A., 944 F.2d 870 (Fed. Cir. 1991) (holding that the terms "breast beam" and "breast plate" were not structural limitations of the patented weaving machine and method but merely reference points to fix the direction of movement from the loom).

Sunbeam maintains that the purpose of the '719 patent was to provide a brewing device with a thermal carafe having insulated walls and an insulated lid. Sunbeam argues that a plain reading of the of the '719 patent makes clear that it pertains to thermally insulated carafes adapted for use in connection with an automated brewing device. Sunbeam directs the Court's attention to the introduction to the summary of the invention in the patent:

> The present invention substantially improves upon the prior art by providing a thermal carafe brewing and dispensing device which has a brew-through lid which includes a liquid pressure controlled and activated valve to provide a unidirectional flow path into the carafe. In accordance with one aspect of the invention, a thermal carafe adapted for use in connection with a an automatic drip brewing device includes a vessel with thermally insulated walls. . . (emphasis added).

Col. 1, lines 45-58. Sunbeam argues that the patentee did not intend to protect a brewing device that is insulated but instead a brewing device having a thermal carafe that is insulated.

Second, Sunbeam argues that even if the court finds that the preamble does limit the claim, the phrase "thermally insulated brewing device" does not require the entire coffee maker

**NOT FOR PUBLICATION**

to be insulated but only a portion of it, namely the thermal carafe and lid.  Sunbeam argues that this interpretation is consistent with the patent specifications and drawings.  See FIG 1 and col. 2 lines 52-67 & col.1, lines 1-34.

Sunbeam maintains that the fact that the specification does not refer to the "thermal carafe" as a brewing device does not render its interpretation invalid.  The purpose of a preamble is to set out in terse terms what will be described in the claim language itself.  The phrase "thermally insulated brewing device," it argues, merely indicates that some portion of the coffee maker described in limiting terms will have an insulated component.  The claim language shows that two components are in fact insulated – the carafe and the lid.

Finally, Sunbeam argues that insulating the entire coffee maker would serve no practical function and would exclude all of the embodiments of the invention disclosed in the '719 patent. Sunbeam points out that there is no need to insulate the brewing area, the base, or many other components of the coffee maker in order to achieve the goals of the patent.  Sunbeam directs the Court's attention to the patent specification which describes the preferred embodiment to include only insulated carafes and lids.  FIGS 1-6 & col. 2-5.   Sunbeam cites Howe v. Medical Components, Inc., for the proposition that an interpretation which excludes the preferred embodiments cannot be sustained.  814 F.2d 638, 643-44 (Fed. Cir. 1987).

### b.  The Court's Construction

The key inquiry is whether "thermally insulated brewing device" is a claim limitation which limits the scope of the invention or whether it is merely a reference point.  In Bell Comm'ns Research, Inc. v. Vitalink Comm'ns Corp., the Federal Circuit advised: "A preamble

**NOT FOR PUBLICATION**

has the import that the claims as a whole suggests for it." 55 F.3d 615, 620 (Fed. Cir. 1995). A preamble limits an invention if it recites structural limitations of the claimed invention or if it is necessary to give life, meaning and vitality to the claim. Seachange Int'l, Inc., 413 F.3d at 1375 (citations omitted). However, where a patentee uses a preamble only to state a purpose or intended use for the invention, the preamble is not a claim limitation. Rowe v. Dror, 112 F.3d 473, 478 (Fed. Cir. 1997). Where the language of the body of the claim "sets out the complete invention in that it provides in detail the functional attributes of the device that performs the methods. . . the language of the preamble is superfluous" and is not a claim limitation. Schumer v. Lab. Computer Sys., Inc., 308 F.3d 1304, 1310 (Fed. Cir. 2003); Bristol-Meyers Squibb Co. v. Ben Venue Labs., Inc., 246 F.3d 1368 (Fed. Cir. 2001). However, if limitations in the body of a claim rely upon and derive antecedent basis from the preamble, the preamble acts as a necessary component for the claimed invention. See Seachange Int'l, Inc., 413 F.3d at 175-76.

Here, the preamble is the only antecedent basis to understand claim 7. Claim 7 states: "The brewing device of claim 1, further comprising. . . ." The term "brewing device" is not used anywhere else in the claims or specifications. Consequently, it is an essential structure for the claims.

The issue, then, is how the preamble phrase affects the scope of the invention, and in particular, whether the preamble requires the entire coffee maker to be insulated or whether it is sufficient that the carafe and lid are insulated. Words of a claim are "generally given their ordinary and customary meaning." Philips, 415 F.3d at 1312 (citing Vitronics, 90 F.3d at 1582). However, claim terms must be read not only in the context of the particular claim in which the

**NOT FOR PUBLICATION**

disputed term appears but in the context of the entire patent, including the specifications. Id. at 1313. The interpretation of the preamble should be consistent with the patent specifications which describe the preferred embodiments.

Capresso would have this Court interpret "thermally insulated brewing device" to mean a coffee maker whose entire structure is insulated. Although the Court agrees that the ordinary meaning of "brewing device" is coffee maker, it is unreasonable, in light of the purpose of the patent, the specifications, and the drawings to suggest that the invention is limited to coffee makers where all component parts are insulated. The purpose of the patent is to prevent heat loss from the brewed beverage. To fulfill this goal, there is simply no need to insulate the brewing area, base, or many other components. The claim indicates that two components of the coffee maker are to be insulated – the carafe and the lid. The preferred embodiments likewise describe coffee makers with insulated carafes and lids. FIGS 1-6 & col. 2-5. Nowhere does the patent suggest that the entire structure is insulated. Accordingly, the Court finds that "thermally insulated brewing device" refers to a coffee maker that has some components which are insulated – the carafe and the lid.

### 2. "insulated lid"

#### a. The Parties' Proposed Construction

The dispute over the proper construction of the term "insulated lid" concerns how to read the specification. Capresso asks the Court to construe the term as "lid with an external cavity that may be filled with foam or other insulative material to further enhance the thermal properties of the lid." DeLonghi interprets the term as an insulated lid that has "either an air-tight seal or

-10-

**NOT FOR PUBLICATION**

has its internal cavity filled with foam." In contrast, Sunbeam proposes that the term be construed as "heat retaining top."

The specification states: "the internal cavity of the lid may be filled with foam or other insulative material to further enhance the insulative properties of the lid." FIG 5 & col. 3, lines 50-52. According to Defendants, Sunbeam's construction (heat retaining top) is incomplete because it ignores the part of the patent that specifically discusses what provides the required insulation. Capresso maintains that one skilled in the art reading the claim and patent specification together would understand claim 1 to require the lid to include some additional material to enhance its thermal properties.

In contrast, Sunbeam maintains that while an insulative material such as foam is the <u>preferred</u> embodiment of the invention, it is impermissible to read this limitation into the patent. Sunbeams notes that the language of the specification – "may" and "further" – is permissive, not mandatory. According to Sunbeam, the insulative properties are already present before the addition of any material such as foam. Furthermore, Sunbeam maintains that the insulated lid does not require an air-tight seal. Although the preferred embodiment would prevent air transfer to the greatest extent possible, it is not a requirement of the claim that an absolutely air tight seal satisfies the invention. Instead, Sunbeam claims, it is sufficient that the top helps retain heat inside the carafe when it is properly sealed.

      b. <u>The Court's Construction</u>

The Court is mindful that the specification is highly relevant to claim construction and can be the best guide to the meaning of a disputed term. <u>Vitronics</u>, 90 F.3d at 1582. At the same

**NOT FOR PUBLICATION**

time, the Federal Circuit has cautioned about the danger of importing limitations from the specification into the claim. The emphasis in term interpretation is on how a person of ordinary skill in the art would understand the claim terms. Phillips, 415 F.3d at 1323. That a specification describes a specific embodiment does not confine the claim to that embodiment. Id. Frequently, the purpose of an embodiment is to provide an example of how to practice the invention in a particular case. Id. Courts read the specification to determine whether the embodiment described is meant to be an illustrative example or whether the specification is to be strictly co-extensive.

In the present case, the term "insulated lid" is not specifically defined in the patent but the specification suggests that the lid may be filled with foam or other insulative material. However, the use of the permissive "may" and "further" indicates that the specification is illustrative of a possible specific, enhancing or augmenting embodiment, not limiting. The specification indicates that the lid itself already has insulating properties, with or without the additional insulative material. To read the specification to require the lid to have foam would import a limitation into the claim. The Court construes the term "insulated lid" to mean a heat retaining top.

### 3. "Pressure controlled valve. . . to prevent liquid from exiting the carafe through the liquid passageway"

The term "pressure controlled valve" is specifically defined in the patent: "As used herein, the term 'pressure controlled valve' means that the described valves are moved between opened and closed positions by pressure of liquid and/or gas, and not by mechanical contact with

-12-

**NOT FOR PUBLICATION**

any part or component by manipulation." Column 5, lines 13-17. What is disputed is whether the term "solely" should be imported into this definition.

###### a. The Parties' Proposed Construction

Defendants argue that the purpose of the patent is to address the problem of losing heat from a thermal carafe. They claim that the invention seeks to accomplish this objective by use of a pressure controlled valve that is "operated (opened and closed) solely by liquid and/or gas pressure." (emphasis added). They maintain that a valve that moves by force of gravity is not within the patent because such a valve would not prevent hot gasses from escaping the carafe. They argue that Sunbeam's broad construction would defeat the purpose of the invention.

In contrast, Sunbeam objects to the importation of the term "solely" into the interpretation of the term "pressure controlled valve." Sunbeam argues that the definition does not require that the uni-directional flow be in any particular direction, be completely air-tight and water-tight, or be solely moved by liquid and or gas pressure. Rather, Sunbeam maintains that it is sufficient for the flow to be substantially one-way and for liquid and/or gas pressure to play a role in moving the valve between open and closed while not requiring manual manipulation. According to Sunbeam, a minimal amount of air flow may occur when the valve is used in practice and that a slight amount of leakage occurs does not absolve patent infringement.

###### c. The Court's Construction

It is appropriate for a court to look to the written description for guidance as to the meaning of the terms. Phillips, 415 F.3d at 1316. Where specifications reveal a particular definition given to a claim term, the inventor's lexicography governs. Id. Here, the conflict of

-13-

**NOT FOR PUBLICATION**

construction occurs because "pressure controlled valve" is described in two instances – once with the limiting word "solely" and once without. However, the Court defers to the specific definition of "pressure controlled valve." At the end of the specifications, the patent clearly reads: "As used herein, the term 'pressure controlled valve' means that the described valves are moved between opened and closed positions by pressure of liquid and/or gas, and not by mechanical contact with any part or component by manipulation." Column 5, lines 13-17. As such, the inventor has told us precisely what he intended "pressure controlled valve" to mean. And this definition does not include the word solely. Accordingly, the Court follows the instructions of the inventor and construes the claim term as "a valve, moved between open and closed positions by pressure and/or gas and not by mechanical contact with any part or component by manipulation."

### B.  Claim 7

> The **brewing device of claim 1** further comprising a flow control mechanism on the brewing basket contactable by the insulated lid."

Claim terms are generally used consistently throughout a patent and the usage in one claim can inform the meaning of the same term in another claim. Phillips, 415 F.3d at 1314. The brewing device of claim one refers to the "thermally insulated brewing device" discussed above. It is a coffee maker with some component parts that are insulated, namely the carafe and the lid.

### C.  Claim 10

> A thermal carafe adapted for use with a brewed beverage device as a receptacle and serving container for a brewed beverage, the thermal carafe comprising an

-14-

**NOT FOR PUBLICATION**

>insulated vessel for receiving and containing liquid, a throat which includes a pouring spout, a brew-through lid insertable into the throat and having a liquid passageway through a cross-section of the lid, and a **pressure-controlled valve** in the liquid passageway.

"Pressure-controlled valve" should be construed in the same manner as in claim 1. See Phillips, 415 F.3d at 1314. The Court construes "pressure controlled valve" as: "a valve, moved between open and closed positions by pressure and/or gas and not by mechanical contact with any part or component by manipulation."

**D.  Claim 18**

>The thermal carafe of claim 10 further comprising a **lid seal contactable with a throat flange**.

> a.  The Parties' Proposed Construction

Capresso constructs the phrase to mean "resilient seal in the lid which forms a seal when it interacts with a protruding rim or edge of the container." In contrast, Sunbeam reads the phrase to mean "top or lid that forms a roughly air tight closure when it interacts with a protruding rim or edge of the container." DeLonghi offers no construction.

Capresso maintains that one of ordinary skill in the art understands that something forms a "seal" when it forms a closure that prevents liquid and/or air from escaping. Capresso asserts that there is no support in the patent for anything less than a true seal. In fact, Capresso argues that the patent's purpose of providing a lid that prevents steam vapors from escaping is thwarted if only a "rough" seal is created.

Sunbeam counters that Defendants confuse the preferred embodiment of the invention

**NOT FOR PUBLICATION**

with a limitation of the claim. According to Sunbeam, the goal of the patent is to reduce or minimize heat loss. To accomplish its goal, it is not necessary that a perfect seal be formed. In fact, to suggest that only a perfect seal fulfills this goal would make it nearly impossible for any device to infringe.

### b. The Court's Construction

The patent does not specifically define "seal." The Court is skeptical that it should construe the lid to be a perfect, air tight seat. Nothing in the intrinsic evidence available to the Court requires such a construction. As Sunbeam notes, a seal in which a small amount of vapor seeps out would still fulfill the patent's goal. As a practical matter, taking the extreme position that the seal must be perfect would in effect make it impossible for other coffee makers to infringe the patent. The Court construes the term as "top or lid that forms a roughly air tight closure when it interacts with a protruding rim or edge of the container."

**CONCLUSION**

The disputed claim terms will be construed as set out in this Opinion.

    s/ William H. Walls    
**William H. Walls, U.S.D.J.**

**NOT FOR PUBLICATION**

Appearances:

    Raymond M. Galasso (Simon, Galasso & Frantz, PLC)
    Christopher S. Walton (Simon, Galasso & Frantz, PLC)
    Gregory S. Donahue (Simon, Galasso & Frantz, PLC)
    David S. Osterman (McCarter & English, LLP)
        *Attorneys for Plaintiff Sunbeam*

    Arnold B. Calmann (Saiber, Schlesinger, Satz & Goldstein, LLC)
    Vicki Margolis (Venable LLP)
    Justin Pierce (Venable LLP)
        *Attorneys for Defendant Capresso*

    Paul J. Farrel (Dilworth & Barrese, LLP)
    John F. Gallagher III (Dilworth & Barrese, LLP)
    Paul Brickfield (Brickfield & Donahue)
        *Attorneys for Defendant DeLonghi*